UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANTHONY GLENN BESTER,

                         Plaintiff,

        vs.                                          9:03-CV-1041

B. DIXION, et al.,                                   (TJM/GJD)

                         Defendants.
_____

ANTHONY GLENN BESTER
Plaintiff pro se

SENTA B. SIUDA, Asst. Attorney General
Attorney for Defendants

GUSTAVE J. DI BIANCO, Magistrate Judge

## REPORT-RECOMMENDATION

      This matter has been referred to me for Report and Recommendation by the
Honorable Thomas J. McAvoy, Senior United States District Judge, pursuant to 28
U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

      In this amended civil rights complaint, plaintiff alleges that defendants sexually
assaulted him on December 22, 2002 while he was confined in the Mental Health Unit
(MHU) at Auburn Correctional Facility. (Dkt. No. 18).  Plaintiff seeks substantial
monetary relief.

      Presently before the court is defendants' motion for summary judgment
pursuant to FED. R. CIV. P. 56. (Dkt. No. 42).  Plaintiff has responded in opposition to
the motion. (Dkt. No. 43).  For the following reasons, this court agrees with
defendants and will recommend dismissal of the complaint.

## DISCUSSION

### 1.   <u>Summary Judgment</u>

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact.  FED. R. CIV. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted).  "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id*.  However, when the moving  party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

At that point, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id. See also Burt Rigid Box v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 91 (2d Cir. 2002)(citations omitted).  However, only disputes over facts that might affect the outcome of the suit under governing law will properly preclude summary judgment. *Salahuddin v. Coughlin*, 674 F. Supp. 1048, 1052 (S.D.N.Y. 1987)(citation omitted).

### 2.   <u>Facts</u>

Plaintiff alleges that he was taken out of his cell "to see the Doctor" on December 22, 2002. Amended Complaint (AC) at p.4.  Plaintiff states that on his way to the Mental Health Unit (MHU), a nurse gave plaintiff a "shot of medication," and plaintiff was then placed in a "side room." *Id*.  Plaintiff claims that as he was waiting

in the "side room," defendants B. Dixion;[1] James Sereria; and Dick Reston[2] entered the room with their "stick [sic]." *Id.* Plaintiff states that before he had a chance to stand up, the defendants jumped on him and held him down. *Id.* at p.5. Plaintiff claims that defendant Ruston pulled down plaintiff's underwear and he was placed on his stomach. *Id.* Plaintiff alleges that although he tried to fight off the defendants, defendant Sereria placed his baton on plaintiff's neck, and then plaintiff states that he felt something hard enter his buttocks. *Id.*

Plaintiff states that the defendants were calling other corrections officers to come and look, but plaintiff then lost consciousness. *Id.* at p.6. Plaintiff states that two days later, he was sent to Marcy Psychiatric Center. *Id.* Plaintiff states that he told the staff at Marcy what had happened, but they just kept telling him not to worry. Plaintiff claims that one of the doctors who examined him is now deceased, and another doctor who examined plaintiff told him that he would "be okay." *Id.* Plaintiff states that he spoke to an investigator named Steve Townes about the incident, and that Investigator Townes gave plaintiff "places to write." *Id.* At the end of plaintiff's statement of facts, he claims that he wishes to sue Marcy Hospital "for not taking 'A' [sic] report."

**3.    Failure to Serve**

The Federal Rules require that a defendant be served within 120 days of filing the complaint. FED. R. CIV. P. 4(m). The failure to serve a defendant within 120 days

---

[1] The correct spelling of this defendant's name is Dixon, and the court will use the correct spelling throughout the rest of this report and recommendation.

[2] The correct spelling of this defendant's name is Ruston, and the court will use the correct spelling throughout the rest of this report and recommendation.

of filing the complaint may be a ground for dismissal of the complaint unless good cause is shown for an extension of that time. *Id.* It is true that a pro se, in forma pauperis plaintiff may rely upon the Marshal to properly serve the summons and complaint. *Romandette v. Weetabix*, 807 F.2d 309, 311 (2d Cir. 1986).

In this case, the Marshal attempted service upon defendant Sereria, but on July 22, 2005, the summons was returned unexecuted, together with a letter from Auburn Correctional Facility Liaison Officer Lawrence M. Cheney, stating that Auburn Correctional Facility did not have an employee named Sereria. (Dkt. No. 25). In an attempt to complete service on this defendant, on August 1, 2005, the court sent a letter to William M. Gonzalez, Deputy Counsel for the New York State Department of Correctional Services (DOCS). (Dkt. No. 31). In that letter, the court requested that Attorney Gonzalez assist the court in determining whether DOCS had an address on file for this defendant or whether an agent for service of process could be designated. (Dkt. No. 31).

On August 22, 2005, the court received a letter from Attorney Gonzalez, stating that an employee named Sereria could not be identified. (Dkt. No. 32). The docket sheet in this action indicates that Attorney Gonzalez's letter was then forwarded to plaintiff, asking him to confirm the correct spelling of this defendant's name, and enclosing a new Marshal's form for service. Plaintiff wrote to the court that he did not know the spelling of the third defendant's name, and although the court rejected this letter because plaintiff had not served defense counsel with a copy of the letter, the rejection order also directed plaintiff to inform the court if discovery in the action should reveal the name of the third defendant. (Dkt. No. 33).

On April 6, 2006, defense counsel took plaintiff's deposition. Defendants' Ex.

A (Dkt. No. 42).  At the deposition, defense counsel reminded plaintiff that defendant Sereria had not been served. Transcript (T) at 9.  Counsel asked plaintiff if he were still going to attempt service on defendant Sereria, and plaintiff stated that if the defendant could not be identified, there was nothing that plaintiff could do about it. *Id.* Plaintiff also told defense counsel that plaintiff had help in drafting his complaint from an inmate in the law library. (T. at 10).

This court need not decide whether to recommend dismissal as against defendant Sereria for failure to serve because I find that the amended complaint may be dismissed for failure to exhaust administrative remedies.

**4.    Exhaustion of Administrative Remedies**

Defendants argue that plaintiff has not exhausted his administrative remedies as to his claims as required by the Prison Litigation Reform Act, (PLRA), 42 U.S.C. § 1997e(a).  The PLRA exhaustion requirement applies to ***all inmate suits about prison life***, whether they involve general circumstances or particular episodes and regardless of the subject matter of the claim. *See e.g. Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004).  The Second Circuit has also held, however, that the exhaustion requirement is an ***affirmative defense***, not a jurisdictional prerequisite, and there are instances in which the exhaustion requirement may either be waived or excused. *Id.* at 675. (citations omitted).

Additionally, as with other affirmative defenses, the defendant has the burden of proof to show that plaintiff failed to exhaust his administrative remedies. *McCoy v. Goord*, 255 F. Supp. 2d 233, 247-48 (S.D.N.Y. 2003).  Where questions of fact exist as to exhaustion, summary judgment is not appropriate. *Pendergrass v. Corrections Officers*, 01-CV-243A, 2004 U.S. Dist. LEXIS 28224, *6-7 (W.D.N.Y. Sept. 1, 2004).

At the same time that the Second Circuit decided *Giano*, it also decided four other related cases, clarifying the law in the Second Circuit regarding the PLRA's exhaustion requirement and specifying various instances in which the requirement could be waived or excused. *See Hemphill v. State of New York*, 380 F.3d 680 (2d Cir. 2004)(remanding case to determine if defendant's alleged threats constituted "special circumstances" justified plaintiff's failure to exhaust); *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004)(whether failure to exhaust may be justified because plaintiff obtained favorable rulings on his grievances, but the relief that he was supposed to obtain was never forthcoming); *Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004) (whether including claims in a disciplinary appeal may suffice for the exhaustion requirement); *Ortiz v. McBride*, 380 F.3d 649 (2d Cir. 2004)(complete dismissal is not required when plaintiff brings both exhausted and unexhausted civil rights claims).

Pursuant to these cases, the Second Circuit has developed a "three part inquiry" to determine whether an inmate fulfilled the PLRA exhaustion requirement. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006)(citing *Hemphill*, 380 F.3d at 686). The inquiry asks (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether special circumstances justify the inmate's failure to comply with the exhaustion requirement. *Id.*

In this case, defendants argue that the Supreme Court's decision in *Woodford v. Ngo*, 126 S. Ct. 2387 (2006) may have changed the law regarding possible exceptions to the exhaustion requirement. In *Woodford*, the Supreme Court held that the PLRA's exhaustion requirement mandates "proper" exhaustion of administrative remedies. In *Woodford*, the plaintiff filed a grievance that was rejected as "untimely." *Id.* at 2384.

6

Woodford appealed the procedural denial through the administrative process, and "technically" exhausted his administrative remedies because there were no administrative remedies "available" to him. *Id.* However, the Supreme Court held that the PLRA required "proper" exhaustion as a prerequisite to filing a section 1983 action in federal court. *Id.* at 2387. "Proper" exhaustion means that the inmate must complete the administrative review process ***in accordance with the applicable procedural rules***, including deadlines, as a prerequisite to bringing suit in federal court. *See id.* at 2385-93 (emphasis added).

It is unclear whether *Woodford* has overruled any decisions that recognize "exceptions" to the exhaustion requirement. In fact, based upon the concurring opinion in *Woodford*, it appears that these decisions have ***not*** been overruled in that respect. In that concurring opinion, Justice Breyer specifically noted that two circuits, the ***Second*** Circuit and the Third Circuit that have interpreted the PLRA "in a manner similar to that which the [Supreme] Court today adopts [in *Woodford*] have concluded that the PLRA's proper exhaustion requirement is not absolute." *Woodford*, 126 S. Ct. at 2393 (citing *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004); *Giano v. Goord*, 380 F.3d 670, 677 (2d Cir. 2004))(Breyer, J. concurring). Justice Breyer then stated that on remand, the lower court should "similarly" consider any claims that the inmate might have concerning whether his case "falls into a ***traditional exception that the statute implicitly incorporates***." *Id.* (emphasis added).

The Second Circuit has not specifically considered the effect that *Woodford* may have had on *Giano-Hemphill* line of cases. However, in *Ruggiero v. County of Orange*, 467 F.3d 170, 175-76 (2d Cir. 2006), the Second Circuit stated that it did not need to determine what effect *Woodford* has upon the Second Circuit case law in the

exhaustion area because in *Ruggiero*, the court found that plaintiff would not have prevailed even assuming the continued validity of the ability to "excuse" non-exhaustion.  In *Sloane v. Mazzuca*, the court stated that it would follow the "current" law in the Second Circuit until the Second Circuit specifically addressed the issue. *Sloane v. Mazzuca*, 04-CV-8266, 2006 U.S. Dist. LEXIS 79817, *19-20 (S.D.N.Y. Oct. 31, 2006)(citation omitted).

In *Hairston v. Lamarche*,  Magistrate Judge Andrew Peck in the Southern District of New York utilized the Second Circuit's three-part test for exhaustion articulated by those Second Circuit cases. *Hairston v. Lamarche*, 05 Civ. 6642, 2006 U.S. Dist. LEXIS 55436, *21 (S.D.N.Y. Aug. 10, 2006)(Report-Recommendation) (M.J. Peck).  Magistrate Judge Peck also noted that the Second Circuit had not ruled on the effect of *Woodford*, and stated that Southern District Court Judge Michael B. Mukasey used the *Hemphill* standard after *Woodford* while citing Justice Breyer's concurring opinion and noting that the result in *Woodford* might not be "compatible" with **some** of the cases in the Second Circuit applying *Hemphill*.  *Id.* at *22 n.9 (citing *Collins v. Goord*, 438 F. Supp. 2d 399, 411 n.13 (S.D.N.Y. 2006)). *See also Hernandez v. Coffey*, 99 Civ. 11615, 2006 U.S. Dist. LEXIS 52066, *7-12 (S.D.N.Y. July 26, 2006)(D.J. William H. Pauley, III)(using the three-part *Hemphill* test after *Woodford* and specifically citing *Woodford*).

Other courts have distinguished cases in which the inmate **himself causes the unavailability of the grievance process** by simply not filing in a timely manner, with situations in which **prison officials prevent inmates from using the administrative process**. *See Blackmer v. Northern New Hampshire Correctional Facility*, 06-CV-158, 2006 U.S. Dist. LEXIS 67598, *5-6 (D.N.H. Sept. 20, 2006)(M.J. James R.

8

Muirhead).  This court agrees with this distinction and finds that until the Second

Circuit has specifically addressed the issue, a court must still determine whether

"traditional exceptions" apply in a plaintiff's case.

Defendants in this case argue that plaintiff has admitted that he did not exhaust

his administrative remedies, either at Auburn, where the incident occurred, or at

Marcy Correctional Facility to which he claims he was transferred two days after the

alleged incident.  New York State provides inmates with a grievance procedure to

follow by which inmates may file complaints and appeal adverse decisions. N.Y.

CORRECT. LAW §139; N.Y. COMP. CODES R. & REGS. tit. 7 § 701.1 *et seq.* (NYCRR).

The regular Inmate Grievance Program (IGP) consists of a three-tiered process.

*Hemphill*, 380 F.3d at 682.  The inmate must first file a grievance with the Inmate

Grievance Resolution Committee (IGRC). *Id.* § 701.5(a)(1).[3]  An adverse decision of

the IGRC may be appealed to the Superintendent of the Facility. *Id.* § 701.5(c).

Adverse decisions at the Superintendent's level may be appealed to the Central Office

Review Committee (CORC). *Id.* § 701.5(d).  Time deadlines apply at all levels of the

process, but exceptions to any of the deadlines may be made based on "mitigating

circumstances."  *Id.* § 701.5(a)(1).  An inmate must appeal any denial of his grievance

to the highest available administrative level. *Martinez v. Williams*, 349 F. Supp. 2d

677, 682 (S.D.N.Y. 2004).

There is also an expedited process for the review of complaints of inmate

harassment or other misconduct by corrections officers or prison employees. 7

---

[3] The court notes that the NYCRR sections governing the Inmate Grievance Procedure appear
to have been re-numbered in June of 2006.  This court has cited the current versions of the NYCRR
sections.  They do not necessarily match the sections cited in *Hemphill*.

NYCRR § 701.8.  Under this procedure, the inmate may (but is not required to) report the misconduct to the employee's supervisor. *Id.* § 701.8(a)(Note).  The inmate then files a grievance under the normal procedures outlined above, but all grievances alleging employee misconduct are given a grievance number, and sent immediately to the Superintendent for review. *Id.* § 701.8(a) & (b).  Under the regulations, the Superintendent or his designee shall determine immediately whether the allegations, if true, would state a "bona fide" case of harassment, and if so, shall initiate an investigation of the complaint, either "in-house", by the Inspector General's Office, or by the New York State Police Bureau of Criminal Investigations. *Id.* § 701.8(c) & (d). An appeal of the adverse decision of the Superintendent may be taken to the CORC as in the regular grievance procedure. *Id.* § 701.8(h).  A similar "special" procedure is provided for claims of discrimination against an inmate. *Id.* § 701.9.

At his deposition in this case, plaintiff admitted that he did not utilize the above grievance procedure. Deposition Transcript (T) at 31.  He did not file a grievance while he was incarcerated at Auburn. *Id.*  Plaintiff stated that he believed that Marcy did not have a grievance committee. (T. 31).  However, plaintiff claims that he wrote to the Inspector General's Office and spoke to an "investigator" named Townsend, who allegedly told plaintiff that he was investigating the issue and would be "sending a paper" to Albany. (T. 27-30).  Plaintiff also states that he attempted to contact the FBI in Utica, New York, but had no letters confirming any of these alleged attempts at obtaining an investigation of this incident. (T. 30).

Plaintiff's mistaken "belief" that Marcy did not have a grievance committee and the fact that plaintiff was transferred to Marcy shortly after the alleged incident are insufficient in themselves to excuse the exhaustion requirement. *See Finger v.*

*McGinnis*, 99 Civ. 9870, 2004 U.S. Dist. LEXIS 11048, *13-14 (S.D.N.Y. June 16, 2004). Thus, with respect to the first factor in the three-part test for exhaustion, this court finds that the administrative remedies were "available" to plaintiff. Additionally, plaintiff does not allege that defendants actions prevented him from filing a grievance. Thus, the second factor of the three-part test favors dismissal for failure to exhaust. However, plaintiff's condition when he was transferred and his alleged attempt to obtain relief from the Inspector General's Office bear further discussion.

The third factor in the test for exhaustion is whether there are any "special circumstances" that justify plaintiff's failure to exhaust. *Brownell*, 446 F.3d at 311-12 (discussing the three factors). In this case, the court was initially concerned because it appears that plaintiff was transferred to Marcy because of a mental condition. Thus, the court must determine whether plaintiff's mental condition would have excused his failure to exhaust. A review of plaintiff's deposition shows that plaintiff states that while he was at Marcy, he wrote to the Inspector General's Office, he spoke to investigators, and states that he "wrote to anyone that he could find in the law library." (T. 27). He also stated that individuals named "Team Orderlies" told plaintiff to write to someone named "Townsend." (T. 29). Plaintiff admits, however, that he did not file a grievance during this time. (T. 31).

Although the court was initially concerned with plaintiff's mental status, it appears from his deposition that he was quite capable of filing a grievance since he testified that he wrote to "anyone he could find in the law library." Thus, as stated above, the fact that he wrote to others because he did not think that there was a grievance committee at Marcy does not excuse his failure to exhaust administrative

11

remedies.  There are no "special circumstances" justifying plaintiff's failure to exhaust.  Therefore, regardless of the effect of *Woodford* on the status of Second Circuit law on exhaustion, this plaintiff's case would still have to be dismissed for failure to exhaust.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 42) be **GRANTED**, and the amended complaint **DISMISSED FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: December 12, 2006

_____

Hon. Gustave J. DiBianco
U.S. Magistrate Judge